HAYDEN *v.* TOWNSHIP OF BANGOR.

MUNICIPAL CORPORATIONS—HIGHWAYS—BRIDGES.

Evidence that decedent drove his vehicle and team around a washed out culvert and across a temporary bridge erected by the township, that in returning to the highway he attempted to drive across an open ditch partly filled with water, that he made no effort to ascertain whether the way was a safe one, and that a vehicle which preceded

him at the same place in plain view encountered difficulty in crossing the ditch, and that the occupants were partly thrown out and partly jumped from the buggy, *held,* to warrant the trial court in directing a verdict for defendant township on the ground of contributory negligence, there being no invitation or direction to cross the ditch at the point selected by decedent.

Error to Van Buren; Des Voignes, J. Submitted June 19, 1914. (Docket No. 81.) Decided October 2, 1914.

Case by Lillie Hayden, as administratrix of the estate of Andrew Hayden, deceased, against the township of Bangor for the unlawful killing of decedent. Judgment for defendant. Plaintiff brings error. Affirmed.

*Thomas J. Cavanaugh* and *Diekema, Kollen & Ten Cate,* for appellant.

*L. J. Lewis* and *David Anderson,* for appellee.

On August 8, 1912, a very heavy rainfall occurred in Van Buren county. As a result several bridges and culverts were washed out in the township of Bangor. Among them was a culvert on the town line road between Arlington township and Bangor township; the culvert itself lying within the village of Bangor. On the following day, in the afternoon, Mr. Disbrow, the highway commissioner, instructed Mr. Raymond, the marshal of said village, to put down a temporary bridge around said culvert. Mr. Raymond, on the afternoon of the 9th, erected a temporary bridge 20 feet east of the culvert proper. This bridge extended about 4 feet east of the line of the highway onto private property. It was made of telephone poles laid across the creek and covered by planking 16 feet long, with a little filling to the approaches on either end. At the north

side of this temporary bridge there was a roadway leading southeasterly into the lands of Mr. Boyer, and over this people going south entered to cross the temporary bridge. To the south of the bridge there stood a row of maple trees along the roadside, and east of the trees was an open oat field. Between the trees and the traveled portion of the highway there was a ditch which gradually sloped from the bottom up to the traveled part of the highway. It was an old ditch partly caved in and grown up with grass, weeds, briars, etc. After erecting the temporary bridge, Raymond placed a light on a box at the north end, and an 18-foot board across the way, one end resting on the ground, and the other on the second wire of a barbwire fence to the east. South of the temporary bridge no barrier was placed to indicate at what point the traveler going south should leave the private property and seek to regain the highway.

On the morning of the 10th of August, sometime between 6 and 7 o'clock, three teams started south from Bangor and across the temporary bridge in question. They proceeded in the following order: John W. Greenman in front, driving a logging truck; following him, Mr. Marshall and another gentleman in a buggy to which a single horse was hitched; following the buggy was plaintiff's decedent, likewise driving a heavy logging truck. The front wheels of the truck were 48 inches high, and the bolster upon which plaintiff's decedent was riding was 1½ inches higher than the wheel. He was seated in the middle of the bolster. Greenman, who was in advance, safely crossed the temporary bridge and proceeded south about 50 or 60 feet into the oat field, at which point, his horses having come into contact with a loose wire, he stopped his team in order to remove the wire. While he was standing there, Marshall and his companion in the buggy passed him to the right, and at a point

between 60 and 75 feet south of the temporary bridge turned west across the ditch in order to regain the traveled portion of the highway. Marshall was closely followed by plaintiff's decedent with the logging truck.

In crossing the ditch, as the front wheels of the buggy dropped into it, Marshall and his companion were partially thrown, and, in order to save themselves, were compelled to jump from the buggy. As the team of plaintiff's decedent approached the ditch it was going very slowly, and, as one witness testified, "it kind of stopped," when plaintiff's decedent slapped the horses with his line, and they proceeded into the ditch. As the front wheels of the logging truck dropped into the ditch, which was at that point about two feet deep partially filled with water and obscured by a growth of weeds, etc., the plaintiff's decedent was violently pitched forward upon the ground, and the horses, proceeding rather rapidly to get out of the ditch, drew the truck over him, causing injuries from which he died about two days later.

Among other acts of negligence relied upon by the plaintiff, it is said in the amended declaration:

"That it also became the duty of said township to put up and erect barriers or notices or warnings or some means by which the public would be warned of the particular course that should be followed to gain entrance to the traveled part of the highway after crossing said temporary bridge to the south, or so that the public might know at what particular point it would be safe to endeavor to reach said temporary bridge in traveling north on said highway."

The case was submitted to the jury, and, a verdict having been found in favor of defendant, it is now here for review.

BROOKE, J. (*after stating the facts*). At the close of the evidence introduced on behalf of the plaintiff, a motion was made by defendant for a directed verdict

based on many grounds, and, among them, upon the ground that plaintiff's decedent was guilty of contributory negligence as a matter of law. This motion was denied, and the case was submitted to the jury under a charge which is severely criticised by counsel for plaintiff, and upon which many assignments of error are based.

As to just what duty a municipality owes to the public in the maintenance of temporary ways outside the regular traveled portion of the highway, it is not necessary under the facts in this case to determine. We have read the evidence introduced on behalf of the plaintiff with care, and have reached the conclusion that the motion for a directed verdict made by defendant should have been granted upon the ground that plaintiff's decedent was guilty of contributory negligence as a matter of law. We are impelled to this conclusion by a consideration of the following facts. There had been in the vicinity of the scene of the accident an unusually severe rainfall, resulting in the carrying away of many bridges and culverts. The bridge over which plaintiff's decedent passed had been completed on the evening of the 9th. He and his companions passing over it on the morning of the 10th were the first persons to use it. No roadway south of the temporary bridge had been marked out, and one crossing it was notified to go in no particular direction. Plaintiff's decedent was the third to cross the bridge. The one who first crossed it kept to the left in the field and was in a safe place; the second to cross it, Marshall, who was in the buggy, instead of likewise keeping to the left, turned abruptly to the right and attempted to cross the ditch in question and to regain the roadway at once. There was no invitation to cross at that point, and when choosing a new way common prudence would have imposed the duty on Marshall and his companion to satisfy them-

selves of the reasonable safety of the way before using it. This they did not do, and in crossing were partially thrown and partially jumped from the rig in which they were riding. All this occurred in broad daylight immediately in front of plaintiff's decedent. His own team when it approached the ditch in question hesitated, and without the slightest care for his own safety he urged them to cross. At the moment he was perched upon a narrow, slippery bolster, the top of which was faced with iron, only 3½ inches wide, with his feet resting upon the tongue or hounds in front of him. With the ocular demonstration of what had happened immediately preceding his attempt to cross and the fact that Greenman's team stood but a few feet to the left in a place of safety, we think that the plaintiff's decedent's conduct in the premises indicates such a reckless disregard for his own safety as to preclude plaintiff's recovery. Inasmuch as for this reason a verdict should have been directed, it becomes unnecessary to consider any of the assignments of error upon which plaintiff relies.

The judgment is affirmed.

MCALVAY, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.